BROSKY, Judge.
 

 Darryl Blackwell appeals from the March 5, 1993 order of the trial court denying his petition under the Post Conviction Relief Act (“PCRA”), 42 Pa.C.S. §§ 9541
 
 et seq.
 
 The trial court order also granted PCRA counsel’s motion to withdraw as counsel, and, informed appellant that he could proceed
 
 pro se
 
 or retain private counsel. On April 2,1993 appellant filed a
 
 pro se
 
 notice of appeal and on March 9, 1994 present counsel
 
 *299
 
 entered his appearance on behalf of appellant; counsel filed an appellate brief on appellant’s behalf.
 

 Appellant and the victim, June Lane, who was his former girlfriend, lived in separate residences in West Philadelphia.
 
 [1]
 
 On November 16, 1986 appellant lured Ms. Lane into his house on the false pretext that he was repaying a loan owed to her. Once appellant had Ms. Lane in his home he punched her, dragged her to the second floor, bound her with an electrical cord, taped her mouth shut, wrapped a tie around her neck and raped her. Appellant threatened to hurt Ms. Lane and members of her family if she told anyone about the crimes.
 

 Ms. Lane returned to her grandmother’s home in a hysterical state and told her grandmother that appellant had raped her. The grandmother called her son, who was the victim’s uncle, and told him about the rape. He took the victim to a police station and then to the hospital.
 

 Appellant was arrested and when the police searched his house they found the electrical cord, the tape and the tie. Appellant was charged with rape.
 

 Appellant was released on bail on November 21, 1986. After his release he admitted to a friend, Robert Belk, that he had raped the victim. He also told Belk that he should have killed the victim and disposed of the physical evidence that had been subsequently seized by the police. N.T., 2/26/87, at 18.
 

 The victim moved from her grandmother’s home to her uncle’s home. She appeared at the November 26, 1986 first listing of appellant’s preliminary hearing but the case was continued pursuant to appellant’s request. On December 7, 1986 the victim spent the night at her grandmother’s house. The next morning she left to go to work. Appellant was sitting on his front porch, which was located two houses away from the grandmother’s home. Appellant confronted the victim on the sidewalk and grabbed her arm. He ordered her
 
 *300
 
 not to testify against him. She ran toward her grandmother’s porch and appellant followed her. Appellant produced a .22 caliber revolver and pointed it at the victim. N.T., 5/9/89, at 50. He shot the victim three times, in her head, her face and her hand. Appellant then fled into his home. The victim then staggered to her grandmother’s porch and her grandmother helped her into the house.
 

 Appellant barricaded himself in his house and police arrived.
 
 [2]
 
 Over several hours police negotiators and a minister attempted to get appellant to surrender. Appellant was on a second floor landing and threw the .22 caliber revolver to the base of the staircase leading to the second floor. Police then entered the house and found appellant lying at the top of the staircase; police subsequently determined that appellant had apparently shot himself twice in his head. Upon discovering appellant an officer asked him if he was hurt. Appellant replied, “I f — ked up.” N.T., 5/8/89, at 64. The police began to assist appellant and appellant stated, “How’s the girl?”
 
 Id.
 
 at 65. An officer asked appellant to whom he was referring. Appellant replied, “The girl I shot.”
 
 Id.
 
 Appellant was eventually charged with retaliation against a witness, aggravated assault, possessing an instrument of crime and related charges.
 
 [3]
 

 The victim was eventually discharged from the hospital. Because of the seizures resulting from the emergency brain surgery the doctors prescribed Dilantin in an attempt to control any possible future seizures. The victim began to have severe headaches and re-entered the hospital. The victim died on January 26, 1987. The medical examiner determined that the cause of death was fulminating hepatitis (with liver failure
 
 [4]
 
 ) caused by the gunshot wounds, the cranio
 
 *301
 
 tomy (which is a surgical opening of the skull) performed upon her during emergency surgery immediately after the shooting, and, the Dilantin therapy; the manner of death was determined to be homicide. N.T., 5/9/89, at 52.
 

 Appellant was charged with homicide. All of the charges (for the rape and for the subsequent shooting) were consolidated for trial. Appellant attempted to suppress the items seized in the search subsequent to the rape, the gun used in the shooting, and statements made after his arrest for the shooting. After a suppression hearing on May 8, 1989 the trial court suppressed appellant’s statement to police regarding the shooting of the victim (in which appellant replied, “The girl I shot.” N.T., 5/8/89, at 65), since appellant was not given his
 
 Miranda
 
 warnings before he made the statement. The trial court denied all other defense requests to suppress evidence.
 

 Appellant then entered into a negotiated plea bargain. On May 9, 1989 the trial court conducted a lengthy and thorough guilty plea colloquy. N.T., 5/9/89, at 1-65. Appellant then pled guilty to first-degree murder, possession of an instrument of crime, retaliation against a witness and rape. Appellant also agreed to the sentence, which was determined pursuant to the negotiated plea agreement; he was sentenced to a mandatory life sentence for the first-degree murder, and consecutive sentences of ten-to-twenty years for the rape, three and one-half to seven years for retaliation against a witness and two and one-half to five years for possession of an instrument of crime.
 
 [5]
 
 During the plea colloquy appellant was told by the trial court that he was going to be bound by the answers that he gave and the statements that he made at the hearing; he was also told that he would not be allowed to subsequently contradict his answers and statements. N.T., 5/9/89, at 11. Appellant responded that he understood those points.
 
 Id.
 
 at 11-12.
 

 
 *302
 
 Appellant did not seek to withdraw his guilty plea; he filed no motion for reconsideration of sentence. He filed no direct appeal. On September 18, 1989 he filed a
 
 pro se
 
 PCRA petition and counsel was appointed to represent him. Before court-appointed counsel could file an amended PCRA petition appellant moved to withdraw the petition without prejudice so that he could retain private counsel. The PCRA petition was withdrawn on March 12, 1992.
 
 [6]
 
 Appellant did not retain private counsel and filed another
 
 pro se
 
 PCRA petition on June 9, 1992.
 
 [7]
 
 The trial court appointed another attorney to represent appellant. After counsel reviewed the record and found all of appellant’s issues to be without merit he filed a petition to withdraw as counsel, pursuant to
 
 Commonwealth v. Finley,
 
 379 Pa.Super. 390, 550 A.2d 213 (1988).
 
 [8]
 
 The trial court dismissed appellant’s PCRA petition and granted counsel’s motion to withdraw. Appellant filed the instant appeal. Appellant’s fifth attorney is now representing him in this appeal.
 

 Appellant claims on appeal that,
 

 I. The only basis of the plea bargain was the threat of the death penalty, which would not have been imposed, and if imposed, could not have withstood Pennsylvania Supreme Court review.
 

 A. The statutory
 
 mens rea
 
 requirement for the only aggravating circumstance the prosecution could have presented is totally inconsistent with the facts as presented by the prosecution’s own witnesses.
 

 
 *303
 
 B. Case law decided by the Supreme Court of Pennsylvania available at the time of the plea demonstrates that the death penalty was not sustainable in this case.
 

 II. The defendant should be permitted to withdraw his guilty plea because trial counsel had no rational strategy in counseling defendant to forego defenses of arguable merit and counseling a plea bargain that provided no benefit to the defendant.
 

 A. The defendant had fact issues of arguable merit as to the cause of the victim’s death and premeditation which were surrendered without a
 
 quid pro quo.
 

 B. A plea colloquy, even if performed conscientiously, is not a substitute for constitutionally mandated effective assistance of counsel.
 

 III. The sentencing scheme was an abuse of discretion not justified by any finding of aggravated circumstances and not justified by the one-sided plea bargain.
 

 A. The protection against double jeopardy was violated when sentences for the homicide and retaliation failed to merge.
 

 B. The trial court disregarded mitigating circumstances, unreasonably hindering the defendant’s excellent chances for rehabilitation and possible pardon.
 

 IV. The
 
 Finley
 
 letter and opinion of the lower court fail to address central issues as to ineffectiveness of counsel which vitiate the basis of the defendant’s plea.
 

 A. Both the opinion of Judge Papalini and the
 
 Finley
 
 letter assume, without stating reasons, that the only or central issue for ineffective assistance of counsel is whether first-degree homicide is sustainable on the facts.
 

 B. The
 
 Finley
 
 letter is a superficial
 
 review of
 
 issues the defendant raised
 
 pro se,
 
 not a legal analysis of the claims the defendant had if properly presented.
 

 C. The defendant’s decision to plead guilty was made under mistakes of law so destructive to the exercise of basic rights that his plea cannot be deemed knowing and intelligent.
 

 
 *304
 
 D. Defendant had a right to a trial attorney who would ensure that the verdict reached was the [Sic] either the product of adversarial testing, or who would obtain something of legal value for the defendant in the plea bargain. V. Ineffective assistance of counsel at both the PCRA and trial level has deprived the defendant of any meaningful review of the legality of his plea bargain.
 

 A. The defendant has not previously litigated his claims and has not waived appellate review of the legality of his plea bargain, a cognizable claim under the PCRA.
 

 B. The standard of review for the withdrawal of the defendant’s plea should be the presentencing standard of “any fair and just reason.”
 

 Appellant’s Brief at i-iii.
 

 Our Court stated in
 
 Commonwealth v. Granberry,
 
 434 Pa.Super. 524, 644 A.2d 204 (1994) (No. 1170 Pittsburgh 1992; filed February 7, 1994),
 

 Our scope of review, when examining a post-conviction court’s grant or denial of relief is limited to determining whether the court’s findings were supported by the record and the court’s order is otherwise free of legal error.
 
 Commonwealth v. McClucas,
 
 378 Pa.Super. 202, 548 A.2d 573 (1988). The findings of the post-conviction court will not be disturbed unless they have no support in the record.
 
 Id.
 

 To be eligible for relief under the Post Conviction Relief Act, an appellant must plead and prove by a preponderance of evidence that his conviction resulted from ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
 
 Commonwealth v. Dukeman,
 
 388 Pa.Super. 469, 565 A.2d 1204 (1989); 42 Pa.C.S. § 9543(a)(2)(ii). In establishing a claim of ineffectiveness an appellant must initially demonstrate that the issue underlying the claim of ineffectiveness has arguable merit.
 
 Commonwealth v. Smith,
 
 380 Pa.Super. 619, 552 A.2d 1053 (1988). Next, if
 
 *305
 
 appellant’s claim does have arguable merit, we must determine whether counsel’s failure to pursue the matter had some reasonable basis designed to serve the interests of his client.
 
 Id.
 
 Finally, if the record reveals that counsel was ineffective, it must be determined whether appellant has demonstrated that counsel’s ineffectiveness so prejudiced the appellant’s case that it is likely that the result would have been different absent the errors.
 
 Commonwealth v. Tyson,
 
 363 Pa.Super. 380, 526 A.2d 395,
 
 appeal denied,
 
 518 Pa. 618, 541 A.2d 745 (1987).
 

 The burden of establishing ineffective assistance of counsel rests upon the appellant since counsel’s representation is presumed to be effective.
 
 Commonwealth v. Jones,
 
 389 Pa.Super. 159, 566 A.2d 893 (1989). Appellant must demonstrate that counsel’s omission or commission was arguably ineffective and the likelihood that appellant was prejudiced as a result thereof.
 
 Id.
 

 A claim of ineffectiveness of trial counsel must be raised at the first opportunity at which the counsel whose ineffectiveness is being challenged no longer represents the defendant.
 
 Commonwealth v. Miller,
 
 388 Pa.Super. 7, 564 A.2d 975 (1989). “For the purposes of [the PCRA], an issue is waived if the petitioner failed to raise it and if it could have been raised ... on ... appeal or [in any] other proceeding actually conducted or in a prior proceeding actually initiated under [the PCRA].” 42 Pa.C.S. § 9544(b). Appellant must also prove by a preponderance of the evidence that the allegation of error has not been previously litigated. 42 Pa.C.S. § 9543(a)(3).
 

 Pa.R.Crim.P. 1507(a) states, in pertinent part, “The [trial] judge shall promptly review the [PCRA] motion---- If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the motion ... [without a hearing][.]”
 

 
 *306
 
 The right to an evidentiary hearing on a post-conviction petition is not absolute.
 
 Commonwealth v. Box,
 
 305 Pa.Super. 81, 451 A.2d 252 (1982). A hearing may be denied if a petitioner’s claim is patently frivolous and is without a trace of support either in the record or from other evidence.
 
 Id.
 
 A post-conviction petition may not be summarily dismissed, however, as “patently frivolous” when the facts alleged in the petition, if proven, would entitle the petitioner to relief.
 
 Id.
 

 A defendant is only entitled to counsel during his or her first petition under the Post Conviction Relief Act. Pa. R.Crim.P. 1504(a).
 

 Id.
 
 434 Pa.Super. at 529-531, 644 A.2d at 207-08.
 

 Appellant first claims that the only basis for his plea bargain was a threat that the death penalty could be imposed for a first-degree murder conviction. Appellant avers that the death penalty could not have been imposed in the instant case since the evidence would not have shown that appellant killed Ms. Lane in order to prevent her from testifying against him (i.e., the “aggravating circumstance” that the Commonwealth would have relied upon would not have been supported by the facts in the instant case).
 

 The PCRA states, in pertinent part,
 

 (a) To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence all of the following:
 

 (2) That the conviction or sentence resulted from one of more of the following:
 

 (in) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.
 

 42 Pa.C.S. § 9543(a)(2)(iii).
 

 Appellant did not challenge his guilty plea prior to his sentencing. “An attempt to withdraw a plea of guilty after
 
 *307
 
 sentencing will only be granted where the defendant is able to show that his plea was the result of manifest injustice.”
 
 Commonwealth v. Holbrook,
 
 427 Pa.Super. 387, 394, 629 A.2d 154, 158 (1993). To establish manifest injustice, a defendant must show that his plea was involuntary or was given without knowledge of the charge.
 
 Id.
 
 The decision to plead guilty must be personally and voluntarily made by a defendant.
 
 Commonwealth v. Fluharty,
 
 429 Pa.Super. 213, 632 A.2d 312 (1993). Pa.R.Crim.P. 319 mandates that the guilty plea be offered in open court, and, in order to determine the voluntariness of the plea and whether the defendant acted knowingly and intelligently, the trial court must, at a minimum, inquire into the following six areas:
 

 (1) Does the defendant understand the nature of the charges to which he is pleading guilty?
 

 (2) Is there a factual basis for the plea?
 

 (3) Does the defendant understand that he has the right to trial by jury?
 

 (4) Does the defendant understand that he is presumed innocent until he is found guilty?
 

 (5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?
 

 (6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?
 

 Commonwealth v. Fluharty, supra
 
 at 218, 632 A.2d at 314; Comment to Pa.R.Crim.P. 319. The trial court must determine if there is a factual basis for the plea [i.e., whether the facts acknowledged by the defendant constitute the offense(s) charged].
 
 Commonwealth v. Fluharty, supra.
 
 The aforementioned constitute the only required inquiries regarding a guilty plea.
 
 Id.
 

 The determination of whether the defendant understood the connotations of the plea and its consequences is made by an examination of the totality of the circumstances surrounding the plea.
 
 Id.
 
 Even if there is an omission or defect in the guilty plea colloquy, the guilty plea will not be
 
 *308
 
 deemed invalid if the circumstances surrounding the entry of the plea reveal that the defendant fully understood the nature and consequences of his or her plea and that he or she knowingly and voluntarily decided to plead guilty.
 
 Id.
 
 A defendant may knowingly and voluntarily plead guilty as a matter of strategy or expedience even though he or she is unable or unwilling to admit guilt regarding the crime(s) charged.
 
 Id.
 
 The bottom line is whether the defendant understood what he or she was doing, and our Court will look to the colloquy to determine whether he or she did.
 
 Id.
 

 If a defendant has pled guilty to first-degree murder the trial court must conduct a separate sentencing hearing, before a jury,
 
 [9]
 
 to determine whether the defendant shall be sentenced to death or life imprisonment. 42 Pa.C.S. § 9711(a)(1) and (b). At the hearing evidence regarding aggravating or mitigating circumstances shall be presented. 42 Pa.C.S. § 9711(a)(2). Aggravating circumstances must be proved by the Commonwealth beyond a reasonable doubt. 42 Pa.C.S. § 9711(c)(iii). The trial court must give a jury instruction on aggravating circumstances if “there is some evidence” regarding one or more aggravating circumstances. 42 Pa.C.S. § 9711(c)(i). The verdict must be a death sentence if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or, if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. 42 Pa.C.S. § 9711(c)(iv). In all other cases the verdict must be a sentence of life imprisonment.
 
 Id.
 
 If the victim was a prosecution witness to a murder or other felony
 
 [10]
 
 committed by the defendant and was killed for the purpose of preventing his or her testimony against the defendant in any grand jury or criminal proceeding involving such offenses, then at least one aggravating circumstance exists. 42 Pa.C.S. § 9711(d)(5).
 

 
 *309
 
 In the instant case Robert Belk, who had known appellant all of his life, testified at appellant’s preliminary hearing. Belk testified that he met with appellant after appellant’s release from jail subsequent to the rape of Ms. Lane. Belk testified that appellant told him that he raped Ms. Lane in his house and that “he should have killed her ... and disposed of certain items that were in the house at the time” (the items that appellant mentioned to Belk were bed sheets, underwear and all of the items that were utilized to bind Ms. Lane during the rape). N.T., 2/26/87, at 18.
 
 [11]
 
 Immediately before appellant shot Ms. Lane three times at point blank range he ordered her not to testify against him. When she ran from him he gave chase and shot her.
 

 Appellant now argues that he was “psychologically disturbed, [and] non-rational,” and that his confrontation with Ms. Lane on the morning of the shooting was unplanned and that the shooting was “impulsive.”
 
 [12]
 
 Appellant’s Brief at 16.
 

 Arguendo, assuming that appellant may have been able to present evidence at trial that may have shown him to have been psychologically impaired when he shot Ms. Lane, the state of the evidence at the time that appellant entered into the plea agreement (i.e., evidence regarding his rape of Ms. Lane, appellant’s comments to Mr. Belk and appellant’s confrontation with, comments to, and shooting of Ms. Lane coupled with her resulting subsequent death) revealed that there was certainly a strong possibility that appellant could have been convicted of first-degree murder, and that a jury (or the trial court) could have found, beyond a reasonable doubt, at least one aggravating circumstance (i.e., that appellant shot Ms. Lane, who eventually died as a result of her wounds, in
 
 *310
 
 order to prevent her from testifying at his trial). 42 Pa.C.S. § 9711(d)(5). We can not speculate whether any mitigating circumstances would have been established at a sentencing hearing.
 
 [13]
 
 However, if no mitigating circumstances were established or if the aggravating circumstance or circumstances were found to outweigh the mitigating circumstance or circumstances, then appellant may have been sentenced to death for the lolling of Ms. Lane. 42 Pa.C.S. § 9711(c)(iv).
 

 We have established that there was a real possibility that appellant could have received the death penalty since the Commonwealth possessed, at the pre-trial stage of the proceedings, a considerable capability for proving beyond a reasonable doubt that one aggravating circumstance existed. We must now decide if appellant’s guilty plea was involuntary.
 
 [14]
 
 Since appellant has appealed from the denial of his PCRA petition he must prove, by a preponderance of the evidence, that his guilty plea was unlawfully induced. 42 Pa.C.S. § 9543(a)(2)(iii). We must look to the guilty plea colloquy in order to determine whether appellant’s guilty plea was voluntary.
 
 Commonwealth v. Fluharty, supra.
 

 During the colloquy appellant admitted that the Commonwealth agreed that it would not seek the death penalty if appellant pled guilty to first-degree murder, possession of an instrument of crime, rape and retaliation against a witness. N.T., 5/9/89, at 44. This concession by the Commonwealth was the major inducement that prompted appellant to plead guilty, and appellant was satisfied with the plea agreement.
 
 Id.
 
 The Commonwealth also agreed to
 
 nol pros
 
 several of the charges against appellant. The concessions by the Commonwealth were not the only reasons that appellant pled guilty;
 
 *311
 
 he also appeared to feel remorse for his crimes as he stated to the trial court,
 

 I would like to express my sorrow to the family [of the victim, June Lane] and anybody else that was hurt through these offenses.... Iam more than sorry and today will not end [Sic]. It’s something that I will carry with me for the rest of my days because June [Lane], she was a good person. She tried to help me, but I had a problem.
 

 Id.
 
 at 71. As our Court stated in
 
 Commonwealth v. Fluharty, supra,
 
 it really does not matter why a defendant pleads guilty (it can be for strategic reasons or out of remorse), so long as the plea is voluntary.
 
 Id.
 

 The colloquy was lengthy and thorough. The trial court insured that appellant understood the nature of the charges to which he pled guilty: The trial court explained each element of each crime to appellant and related to appellant exactly how each of appellant’s actions (committed during the commission of the crimes) conformed to each element. N.T., 5/9/89, at 55-65. There was a factual basis for the plea: The Assistant District Attorney outlined the facts regarding all of the crimes that appellant was pleading guilty to.
 
 Id.
 
 at 48-52. The trial court explained to appellant that he had a right to a jury trial and explained all of the rights and privileges appurtenant thereto.
 
 Id.
 
 at 12-21. Appellant repeatedly stated that he understood all of the trial court’s points regarding a jury trial. The trial court explained to appellant, and appellant indicated that he understood, his presumption of innocence.
 
 Id.
 
 at 12-14. The trial court insured that appellant was aware of the permissible range of sentences and/or fines for the offenses to which appellant was pleading guilty; appellant stated that he understood the range of sentences and/or fines.
 
 Id.
 
 at 33-37. The trial court also informed appellant that it was not bound by the terms of any plea agreement unless it chose to accept the agreement; appellant indicated that he understood that fact.
 
 Id.
 
 at 46^8. Therefore, pursuant to
 
 Commonwealth v. Fluharty, supra,
 
 and the Comment to Pa.R.Crim.P. 319, the trial court conducted all of the required inquiries regarding whether appellant’s plea was voluntarily, knowingly and intel
 
 *312
 
 ligently made. Additionally, appellant stated that he understood all that the trial court explained to him during the colloquy, that he was not under the influence of drugs or alcohol at the time of the plea and that he was not suffering from any mental or emotional disability that prevented him from understanding everything that the trial court had stated to him. Appellant also stated that he was satisfied with his trial counsel’s representation. Appellant further stated that he understood that he would be bound by any statements made or answers given during the colloquy, and, that he would not be permitted to, at some future time, contradict those statements and answers.
 
 [15]
 

 Id.
 
 at 11-12. The trial court also explained appellant’s post-plea rights.
 

 Our review of the totality of the circumstances surrounding the aforementioned colloquy assures this Court that appellant’s guilty plea was voluntarily, knowingly and intelligently made. All of the requisite inquiries were conducted and appellant made clear that he understood the connotations of the plea and its consequences. Hence, the trial court did not err in accepting appellant’s guilty plea. Additionally, appellant has not shown that his guilty plea was unlawfully induced or that it was the result of manifest injustice; therefore, he is not entitled to relief under the PCRA.
 
 Commonwealth v. Holbrook, supra;
 
 42 Pa.C.S. § 9543(a)(2)(iii).
 

 Appellant next claims that his guilty plea counsel had no rational strategy in counselling him “to forego defenses of arguable merit”, and, in counselling him to accept a plea bargain that provided no benefit to appellant. Appellant’s Brief at i. Appellant specifically alleges that he may have been able to prove that the proximate cause of Ms. Lane’s death was not the shooting, and, that his “attempted suicide” (and subsequent statements) cast doubt upon the theory of his premeditated murder of Ms. Lane.
 

 First, we note that the acceptance of the plea bargain provided a clear benefit to appellant. We have already deter
 
 *313
 
 mined,
 
 supra,
 
 that there was a genuine possibility that appellant could have received the death penalty had the instant case gone to trial. Hence, his acceptance of the Commonwealth’s offer not to seek the death penalty did not constitute an entrance into a bargain from which he derived no benefit.
 

 Appellant also avers that the physicians who prescribed Dilantin for Ms. Lane, after she was shot by appellant, were responsible for her death: He avers that she died as a result of her reaction to the medication rather than the three gunshot wounds received from appellant.
 

 In support of his claim that Ms. Lane died solely as a result of the medication Dilantin he relies upon a May 29, 1989 letter from Emanuel Rubin, M.D. to appellant’s trial attorney. Dr. Rubin, at the request of appellant’s counsel, examined Ms. Lane’s medical records. He opined in the letter that the cause of Ms. Lane’s death was massive hepatic necrosis with liver failure, caused by the Dilantin (Dilantin-induced hepatotoxicity). Dr. Rubin’s letter did not state that there was a direct link between the gunshot wounds and Ms. Lane’s death.
 

 Dr. Rubin’s letter was not included in the official record submitted on appeal.
 
 [16]
 
 However, what was included in the official record was an unrefuted statement, made by the prosecutor during a summarization of the facts at appellant’s guilty plea colloquy, which quoted the pathologist who performed the autopsy upon Ms. Lane. The pathologist had stated that the cause of Ms. Lane’s death was fulminating hepatitis (with liver failure) caused by the gunshot wounds to her head, the craniotomy performed upon her immediately after being shot by appellant and the Dilantin therapy; the pathologist found that the manner of death was homicide. N.T., 5/9/89, at 52. Hence, the evidence of record at the time of the guilty plea and at present discloses that appellant’s
 
 *314
 
 shooting of Ms. Lane set into motion an interconnected chain of events that led to her death.
 
 [17]
 
 Moreover, the conclusions reached by the pathologist and Dr. Rubin are not necessarily inconsistent since Dr. Rubin did not state that Ms. Lane’s treating physicians were negligent or that the effects of the gunshot wounds did not necessitate Dilantin therapy. Hence, appellant’s plea counsel did not advise appellant to forego a defense that possessed arguable merit.
 

 Appellant also avers that his “attempted suicide” after shooting Ms. Lane and a statement to police that he did not mean to shoot Ms. Lane should have been utilized by his trial counsel as evidence tending to negate a premeditated murder.
 

 As we stated,
 
 supra,
 
 appellant’s “attempted suicide” could just as easily have been interpreted as evidence of his guilt after shooting Ms. Lane, and, his statement to the police that he did not plan to shoot Ms. Lane had to be considered in tandem with evidence that he did intend to shoot her since she would have testified at his trial for rape (i.e., appellant told Mr. Belk that he should have killed Ms. Lane immediately after the rape and destroyed evidence, appellant possessed a loaded handgun when he approached Ms. Lane, he grabbed her and ordered her not to testify, she broke free and ran, and he chased her and shot her three times and then fled). Trial counsel, who was apprised of all of these facts, made a tactical decision that the instant plea bargain was the most advantageous course for appellant since the risk of a jury verdict of first-degree murder and a finding of one aggravating circumstance (and, hence, the imposition of the death penalty) was too great. Given the facts available to trial counsel, and even considering a hindsight approach, we find that trial counsel had a reasonable basis for his advice to appellant to accept the instant guilty plea; hence, trial counsel was not ineffective for
 
 *315
 
 failing to raise a defense of arguable merit.
 
 Commonwealth v. Granberry, supra.
 

 Appellant also avers that during the colloquy the trial court made an incorrect statement during its discussion of specific intent in the context of premeditated murder. The trial court stated,
 
 inter alia,
 
 “They have a rule in Pennsylvania that the specific intent to kill can be formulated by the killer’s use of a deadly weapon to a vital part of a victim’s body.” N.T., 5/9/89, at 64. Appellant avers that the trial court’s statement was misleading since it conveyed to appellant that “his intent, ... as to premeditation for first[-]degree homicide ... was a foregone conclusion.... ” Appellant’s Brief at 26.
 

 We disagree. The trial court properly informed appellant of the burden of persuasion that the Commonwealth carries in attempting to prove premeditated murder. A proper jury charge would be that a jury could infer an intent to kill from the use of a deadly weapon upon a vital part of the body of the victim.
 
 Commonwealth v. Ly,
 
 528 Pa. 523, 599 A.2d 613 (1991). This type of statement does not shift the burden of persuasion to a defendant.
 
 Id.
 
 The statement made by the trial court in the instant case is almost identical to a proper jury charge on the subject matter.
 
 [18]
 
 The statement conveys that a jury “may” find specific intent, and not that it must find specific intent; hence, the matter of specific intent to kill in the instant case was not “a foregone conclusion”. This is especially true, when, as in the instant case, appellant was repeatedly informed that he was presumed innocent and that each element of each crime charged had to be proven beyond a reasonable doubt.
 

 Appellant next claims that his sentences for rape, retaliation against a witness and possession of an instrument exceeded the Sentencing Guidelines, and, hence, the trial court abused its discretion in sentencing him and all of appellant’s attorneys were ineffective for failing to raise the issue.
 

 
 *316
 
 Our Court, in
 
 Commonwealth v. Decker,
 
 433 Pa.Super. 402, 640 A.2d 1321 (1994), quoting from
 
 Commonwealth v. Murphy,
 
 405 Pa.Super. 452, 592 A.2d 750 (1991), stated,
 

 The imposition of a proper sentence is a matter vested in the sound discretion of the trial court whose determination must be respected unless it involves a manifest abuse of discretion. However, the trial court must exercise its discretion in accordance with the applicable provisions of the Sentencing Code, 42 Pa.C.S. §§ 9701
 
 et seq.
 
 The Code provides, in pertinent part, that the trial court “shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any [relevant] guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing. In every case where the court imposes a sentence outside the sentencing guidelines the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines.” 42 Pa.C.S. § 9721(b).
 

 [A] sentencing court is not required to adopt the recommendations in the Sentencing Guidelines but it must at least consider them. The sentencing guidelines do not preclude judicial discretion.
 

 Commonwealth v. Decker, supra,
 
 433 Pa.Super. at 407, 640 A.2d at 1323;
 
 Commonwealth v. Murphy, supra,
 
 405 Pa.Super. at 458, 592 A.2d at 753.
 

 The trial court should also consult a pre-sentence report, if available, where, as in the instant case, incarceration for one year or more is a possibility.
 
 Id.
 
 Further, the trial court must state on the record its reasons for the imposition of the particular sentence.
 
 Commonwealth v. Fetzner,
 
 372 Pa.Super. 469, 539 A.2d 890 (1988). If the trial court examines a pre-sentence report and is aware of the relevant factors to be considered in sentencing a particular defendant we will assume that it meaningfully weighed the various factors, and, we will not disturb the sentencing court’s discretion to sen
 
 *317
 
 tence that defendant as it did.
 
 Commonwealth v. Devers,
 
 519 Pa. 88, 546 A.2d 12 (1988).
 

 Appellant’s claim that his sentences exceeded the Sentencing Guideline ranges is a challenge to the discretionary aspects of his sentence. Such a claim is not cognizable under the PCRA
 
 Commonwealth v. Lewis,
 
 430 Pa.Super. 336, 634 A.2d 633 (1993). The only sentencing issue that is subject to PCRA review is whether the sentence imposed is greater than the lawful maximum. 42 Pa.C.S. § 9543(a)(2)(vii);
 
 Commonwealth v. Lewis, supra.
 
 Counsel cannot be deemed ineffective for failing to raise a baseless claim.
 
 Commonwealth v. Lewis, supra.
 
 Hence, this claim is without merit.
 
 [19]
 

 Appellant also claims that the sentences other than that imposed for first-degree murder were inappropriate since the trial court failed to refer to the Sentencing Guidelines when sentencing appellant outside of the Guidelines, and, that appellant should not have been given consecutive sentences. Again, appellant is not alleging that his sentences were greater than the lawful maximum. Hence, his claim is meritless.
 
 Commonwealth v. Lewis, supra.
 
 Moreover, the plea bargain was specific regarding the length of each sentence and in stating that the sentences were to run consecutive to each other.
 
 [20]
 
 The trial court merely imposed the sentences agreed to by appellant, the Commonwealth and the trial court. Hence, appellant, having voluntarily, intelligently and knowingly entered into the plea agreement, cannot now complain that the sentences were improper.
 

 
 *318
 
 Appellant next claims that his plea counsel was ineffective for failing to argue that his sentences for first-degree murder and retaliation against a witness should have merged.
 

 Merger for sentencing purposes occurs only when the same facts are used to support convictions for crimes having different elements, and, these same facts support convictions for a greater offense and a lesser included offense.
 
 Commonwealth v. Huckleberry,
 
 429 Pa.Super. 146, 631 A.2d 1329 (1993);
 
 Commonwealth v. Jones,
 
 427 Pa.Super. 345, 629 A.2d 133 (1993). One of the crimes must be a lesser included offense of the other.
 
 Id.
 
 A lesser included offense is a crime having elements which are a necessary subcomponent but not a sufficient component of elements of another crime, the greater offense.
 
 Commonwealth v. Huckleberry, supra.
 
 The elements in the lesser included offense are all contained in the greater offense; however, the greater offense contains one or more elements not contained in the lesser included offense.
 
 Commonwealth v. Jones, supra.
 

 In order to be convicted of first-degree murder a defendant must have intentionally killed another human being. 18 Pa.C.S. § 2502(a). An intentional killing is one “by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing.” 18 Pa.C.S. § 2502(d). A person is guilty of retaliation against a witness or victim if he or she “harms another by any unlawful act in retaliation for anything lawfully done in the capacity of witness or victim.” 18 Pa.C.S. § 4953(a).
 

 While some of the same facts were used to support appellant’s convictions for first-degree murder and retaliation against a witness, the two crimes are not greater and lesser included offenses. The
 
 intention to retaliate
 
 against a witness or victim is an element of retaliation against a witness, and said element is not a required element of first-degree murder; hence, retaliation against a witness is not a lesser included offense of first-degree murder. Moreover, since the death of the victim is an element of first-degree murder, and that element is not present in the crime of retaliation against a
 
 *319
 
 witness, first-degree murder is not a lesser included offense of retaliation against a witness. Hence, pursuant to
 
 Commonwealth v. Huckleberry, supra,
 
 and
 
 Commonwealth v. Jones, supra,
 
 the two crimes do not merge
 
 for
 
 sentencing purposes. Accordingly, appellant’s plea counsel was not ineffective for failing to raise the issue.
 
 Commonwealth v. Lewis, supra.
 

 [21]
 

 Furthermore, as we stated,
 
 supra,
 
 the sentences for the various crimes were agreed to by appellant when he accepted the plea bargain. If he had decided to reject the Commonwealth’s offer the case could have proceeded to trial and appellant would have been exposed to a possible death sentence. Therefore, his plea counsel was not ineffective for advising appellant to enter into the plea agreement.
 
 Commonwealth v. Granberry, supra.
 

 Appellant’s next claim is that the “no-merit” letter filed by appellant’s fourth attorney pursuant to
 
 Commonwealth v. Finley, supra,
 

 [22]
 

 and the instant trial court opinion,
 
 *320
 
 “fail[ed] to address central issues as to ineffectiveness of counsel which vitiate the basis of’ his guilty plea. Appellant’s Brief at 30.
 

 Even if the “no-merit” letter and trial court opinion failed to address ineffectiveness of counsel issues, appellant’s current counsel has raised (in a forty-nine page appellate brief) all of the ineffectiveness issues that appellant wished to have raised. We have reviewed and addressed, in this opinion, all of the ineffectiveness issues and found them to be without merit. Hence, appellant has suffered no prejudice as a result of the alleged omissions of PCRA counsel and omissions in the trial court opinion. Therefore, this claim is without merit.
 

 Appellant’s final claim is that trial and PCRA counsel’s ineffective assistance “has deprived [him] of any meaningful review of the legality of his plea bargain.” Appellant’s Brief at 43. He avers that due to ineffectiveness of counsel we should find none of his claims waived, and, that his request to withdraw his guilty plea should be reviewed by this Court under a pre-sentencing standard.
 

 We note that we have not found waiver regarding any of appellant’s issues; we have addressed all of his claims and found them to be without merit.
 

 Regarding the standard of review pursuant to which we scrutinized appellant’s request to withdraw his guilty plea, we utilized the post-sentencing “manifest injustice” standard.
 
 Commonwealth v. Holbrook, supra.
 
 We did so because appellant’s request to withdraw his guilty plea was not raised prior to sentencing.
 
 Id.
 
 However, as we have explained in this
 
 *321
 
 opinion, appellant’s trial counsel was not ineffective for advising appellant to accept the instant plea agreement; hence, trial counsel could not have been ineffective for failing to advise appellant to withdraw the plea prior to sentencing. Since appellant has demonstrated no ineffectiveness of counsel prior to sentencing, we properly employed the post-sentencing “manifest injustice” standard of review in determining whether appellant should be permitted to withdraw his guilty plea.
 

 In summation, we find all of appellant’s issues to be without merit. Accordingly, we affirm the March 5, 1993 trial court order denying appellant’s PCRA petition.
 

 Order affirmed.
 

 [1]
 

 . The victim initially lived in her grandmother's house in West Philadelphia.
 

 [2]
 

 . The police took the victim to the hospital where she underwent emergency brain surgery; she suffered seizures as a result of the surgery.
 

 [3]
 

 . Appellant underwent emergency surgery and was hospitalized for two weeks. He was then sent to the Psychiatric Unit of Holmesburg Prison in Philadelphia.
 

 [4]
 

 . The victim had no history of liver problems prior to being shot by appellant.
 

 [5]
 

 . The Commonwealth agreed to drop its request for the death penalty and all other charges were
 
 nol pressed
 
 (recklessly endangering another person, terroristic threats, violation of the Uniform Firearms Act and intimidation of a witness).
 

 [6]
 

 . Appellant also filed a
 
 pro se
 
 direct appeal to our Court but said appeal was quashed on June 4, 1992 since the PCRA petition was dismissed without prejudice.
 

 [7]
 

 . For purposes of this appeal we will treat appellant's current PCRA as his first PCRA, since his initial PCRA petition was withdrawn without prejudice.
 

 [8]
 

 . The issues reviewed by counsel included a Rule 1100 claim, an alleged breach of the plea agreement and ineffectiveness of counsel for failing to (a) present a defense of involuntary intoxication to the charge of first-degree murder, (b) challenge the sentences, (c) promptly investigate the possibility of presenting an insanity defense and (d) raise a challenge to the Commonwealth evidence showing that appellant’s conduct caused Ms. Lane’s death.
 

 [9]
 

 . The jury requirement may be waived by the defendant with the consent of the Commonwealth. 42 Pa.C.S. § 9711(b).
 

 [10]
 

 . The felonies committed by appellant against Ms. Lane included rape and related charges.
 

 [11]
 

 . It is not unreasonable to assume that Mr. Belk would have offered similar testimony had appellant's case proceeded to trial.
 

 [12]
 

 . Appellant refers to his "attempted suicide”, in his house as police negotiators were attempting to persuade appellant to disarm and exit the house, as further evidence that he was not attempting to silence a witness when he shot Ms. Lane. However, appellant’s "attempted suicide” could also be interpreted as an act that was conceived only after appellant had shot Ms. Lane and realized the desperation of his situation (i.e., he had shot and possibly killed a woman and his house was surrounded by armed police).
 

 [13]
 

 . However, the psychiatric report of Timothy J. Michals, M.D., who examined appellant for the defense during the pre-trial stage of the instant proceedings, indicated that at the time appellant shot Ms. Lane he was not suffering from any mental illness.
 

 We do note that the psychiatric report did state that appellant had a history of alcohol and drug abuse.
 

 [14]
 

 . As mentioned,
 
 supra,
 
 the burden upon appellant is to show that he is entitled to withdraw his guilty plea since it was allegedly the result of manifest injustice.
 
 Commonwealth v. Holbrook, supra.
 

 [15]
 

 . Our Court stated in
 
 Commonwealth v. Iseley,
 
 419 Pa.Super. 364, 615 A.2d 408 (1992), “A criminal defendant who elects to plead guilty has a duty to answer questions truthfully.”
 
 Id.
 
 at 375, 615 A.2d at 414.
 

 [16]
 

 . This Court cannot consider any material that has not been certified in the record transmitted to us.
 
 In Re Estate of Brown,
 
 422 Pa. Super. 448, 619 A.2d 762 (1993);
 
 Starr v. Zdrok andZdrok, P.C.,
 
 419 Pa.Super. 60, 614 A.2d 1209 (1992). A document not filed of record does not become part of the certified record by merely making a reproduction and placing that reproduction in the reproduced record portion of the appellate brief.
 
 In Re Estate of Brown, supra.
 

 [17]
 

 . Even if we were able to consider Dr. Rubin’s letter it does not discount a link between the gunshot wounds and Ms. Lane’s death; the letter simply focuses upon the immediate cause of death rather than an analyzation of whether the prescription of the Dilantin was a proper course of treatment for Ms. Lane’s medical problems following her emergency brain surgery for the gunshot wounds.
 

 [18]
 

 . In any future colloquies the trial court may want to substitute the word “proven” for the word “formulated”.
 

 [19]
 

 . Moreover, our Court stated in
 
 Commonwealth v. Murphy,
 
 405 Pa.Super. 452, 592 A.2d 750 (1991), that a sentencing court is not required to adopt the recommendations in the Sentencing Guidelines; it need only consider the recommendations.
 
 Id.
 
 "The Sentencing Guidelines do not preclude judicial discretion.”
 
 Id.
 
 at 458, 592 A.2d at 753. Hence, the trial court was well within its authority when it sentenced appellant outside of the Guidelines.
 

 [20]
 

 . We note that the trial court, when sentencing a defendant, has the discretion to choose whether the sentences for separate crimes shall run consecutively or concurrently. 42 Pa.C.S. § 9721(a).
 

 [21]
 

 . Appellant cites a quotation from
 
 Commonwealth v. Huckleberry, supra,
 
 which states that "if a person commits
 
 one
 
 act of criminal violence, and that act is the only basis upon which he may be convicted of another crime, the act will merge into the other crime. [Emphasis added.]’’
 
 Id.,
 
 429 Pa.Super. at 153, 631 A.2d at 1332. Appellant argues that the shooting and subsequent death of Ms. Lane was the only act of criminal violence committed, and, hence, the crimes must merge for sentencing purposes. We disagree. The crime of retaliation against a witness involves any unlawful act which harms the witness or victim. There was more than one act of criminal violence (or unlawful act that caused harm) committed against Ms. Lane that was used to support the charge of retaliation against a witness, and, the additional criminal acts were not germane to a conviction for first-degree murder. The multiple criminal acts included the gunshot wounds to Ms. Lane’s face and head (which eventually caused her death and resulted in a charge of first-degree murder),
 
 plus
 
 appellant’s prior act of grabbing Ms. Lane while he ordered her not to testify against him, and, his act of shooting her in her hand (this gunshot wound did not contribute to or cause her death). Hence, appellant did not engage in only one act of criminal violence when he committed the crime of retaliation against a witness, and, therefore, the crime of retaliation against a witness would not merge with the crime of first-degree murder.
 
 Commonwealth v. Huckleberry, supra.
 

 [22]
 

 . Before a motion to withdraw will be granted, there must be an independent review of the record by competent counsel.
 
 Commonwealth v. Finley,
 
 379 Pa.Super. 390, 550 A.2d 213 (1988). Proof is required of each of the following:
 

 
 *320
 
 (1) A "no-merit” letter by [PCRA] counsel detailing the nature and extent of his review;
 

 (2) The "no-merit” letter by [PCRA] counsel listing each issue the petitioner wished to have reviewed;
 

 (3) The [PCRA] counsel’s “explanation”, in the "no-merit” letter, of why the petitioner’s issues were meritless;
 

 (4) The [PCRA] court conducting its own independent review of the record; and
 

 (5) The [PCRA] court agreeing with counsel that the petition was meritless.
 

 Id.
 
 at 393, 550 A.2d at 215.