COMMONWEALTH of Pennsylvania

v.

**Larry L. BELL, Appellant.**

Superior Court of Pennsylvania.

Submitted July 28, 1997.

Filed Jan. 13, 1998.

Reargument Denied March 26, 1998.

---

Harvey L. Anderson, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CIRILLO, President Judge Emeritus, and FORD ELLIOTT and HESTER, JJ.

CIRILLO, President Judge Emeritus:

Appellant Larry L. Bell appeals from an order of the Court of Common Pleas of Philadelphia County denying his petition for relief under the Post–Conviction Relief Act. See 42 Pa.C.S.A. § 9541 et seq. ("PCRA"). We affirm.

Larry Bell and Elwood Small conspired to rob Patrick Blake, a drug dealer from whom Bell had recently purchased marijuana. After arming themselves, Bell with a shotgun and Small with a twelve-inch kitchen knife, the two men went to Blake's apartment in the 6300 block of Germantown Avenue in Philadelphia and demanded money from him. Bell ordered Small to wake the victim, John McCrary, who was asleep. Blake was stabbed by Small, but still managed to escape through a ground floor window. McCrary, attempting to wrest the gun from Bell, struggled with Bell before Small intervened. Small fatally stabbed McCrary. Meanwhile, residents outside the building came to Blake's aid and notified the police.

Bell and Small fled from the apartment, carrying a small television set.

Larry Bell and co-defendant Small were tried before a jury and convicted of second-degree murder, robbery, aggravated assault and criminal conspiracy. Bell was sentenced to life imprisonment on the murder conviction and to concurrent terms of imprisonment of two and one-half to five years for aggravated assault and conspiracy. Bell appealed to this court, which affirmed the judgment of sentence. No petition for allocatur was filed.

On March 1, 1990, Bell filed a PCRA petition. After two evidentiary hearings, one on March 5, 1993 and one on July 12, 1993, the PCRA court denied Bell's petition. Bell filed an appeal to this court, raising several claims of ineffectiveness of counsel and one claim of after-discovered evidence. In one of his ineffectiveness claims, Bell argued that counsel was ineffective for failing to object to the jury charge on second-degree murder. In its charge, the court stated as one of the elements of second-degree murder that the jury must find that the killing was done "in the course of a robbery." Bell argued that the proper charge states that the killing be "in furtherance of a robbery." Bell maintained that his co-defendant killed the victim for personal reasons; he asserted that co-defendant Small's wife had had an adulterous affair with the victim, John McCrary. Bell asserted, therefore, that the murder was not done in furtherance of the underlying felony (robbery). See Commonwealth v. Waters, 491 Pa. 85, 418 A.2d 312 (1980); Commonwealth v. Garcia, 505 Pa. 304, 479 A.2d 473 (1984); Commonwealth v. Rawls, 328 Pa.Super. 469, 477 A.2d 540 (1984). See also Commonwealth v. McNeal, 456 Pa. 394, 396–97, 319 A.2d 669, 671 (1974)("whether or not the killing in this case was 'committed in furtherance of the conspiracy' was a question ... for the jury.").

This court determined that Bell's claim did affect the truth-determining process and, therefore, the claim was cognizable under the PCRA. See 42 Pa.C.S.A. § 9543(a)(2). However, because Bell had waited six years to file his PCRA petition, this court remanded, pursuant to 42 Pa.C.S.A. 9543(b), for a determi-

nation of whether the Commonwealth would be prejudiced in its ability to retry Bell. This court ordered that if prejudice were found, the order denying post-conviction relief should be reinstated; if prejudice were not found, a new trial would be ordered.

Section 9543(b) provides:

**(b) Exception.-**Even if the petitioner meets the requirements of subsection (a), **the petition shall be dismissed if it appears that, because of delay in filing the petition, the Commonwealth has been prejudiced either in its ability to respond to the petition or in its ability to re-try the petitioner.** A petition may be dismissed due to delay in the filing by the petitioner only after a hearing upon a motion to dismiss. This subsection does not apply if the petitioner shows that the petition is based on grounds which the petitioner could not have discovered by the exercise of reasonable diligence before the delay became prejudicial to the Commonwealth.

42 Pa.C.S.A. § 9543(b).

Pursuant to this court's order, an evidentiary hearing was held on August 5, 1996. At that hearing, Detective Peter Dailey testified regarding his efforts to locate witnesses who had testified at trial. He testified that Patrick Blake, the Commonwealth's main witness, had left two forwarding addresses, both in New York City. Detective Dailey sent certified mail to both addresses; both letters were returned as undeliverable. Detective Dailey also attempted to contact Blake through the Department of Motor Vehicles and the welfare department, with no success.

Detective Dailey learned that the victim's father, Carl McCrary, had passed away; the victim's mother had no information about Blake's whereabouts. Additionally, Detective Dailey contacted the funeral director who had buried the victim. The funeral director indicated that he did not know the victim's friends. Detective Dailey also attempted to contact two other witnesses without success: Marcella McCullough and Willa Mae Lockhart. Another witness, Walter Anderson, was on probation and, at the time of the evidentiary hearing, had not reported to his probation officer in five months.

The only two witnesses available for retrial were Carl Day, who saw Bell fleeing from the scene, and Richard Spraggins, who was with Blake after the incident. We note, as did the trial court, that the defense presented no rebuttal, and neither party offered any information as to the whereabouts of these witnesses.

Following the hearing, the court determined that in light of the lack of available witnesses, in particular the key eyewitness, Patrick Blake, the Commonwealth would be prejudiced in its efforts to retry Bell. The court, therefore, reinstated the order denying collateral relief. On appeal, Bell raises the following claims:

1. Whether the Commonwealth would be prejudiced in retrying appellant where it may use the admission of the prior testimony of any unavailable witness under the provisions of 42 Pa.C.S.A. § 5917, or the common law rule in *Commonwealth v. Melson,* 432 Pa.Super. 1, 637 A.2d 633 (1994), so as to permit the Commonwealth to present the identical evidence at the retrial as was presented at the original trial?

2. Whether the Commonwealth met its burden of proof to establish that appellant's delay in filing his PCRA caused prejudice in retrying appellant, where the Commonwealth could not establish that any witness became unavailable after the affirmance of the conviction on appeal and before the filing of the PCRA petition?

3. Whether the PCRA court impermissibly permitted the Commonwealth to establish prejudice on a standard of proof less than preponderance of the evidence, thus shifting the burden of proof to Appellant to prove that the Commonwealth was not prejudiced?

4. Whether appellant is denied due process of law under the United States and Pennsylvania Constitutions, where his constitutionally deficient conviction is permitted to be afforded on the basis of a statute, 42 Pa.C.S.A. § 9543(b)?

5. Whether the PCRA court erred in accepting hearsay testimony over objection

to prove unavailability of the key Commonwealth witness?

6. Whether the PCRA court erred in denying the indigent appellant the right to obtain a detective to conduct a further investigation to provide rebuttal evidence to the Commonwealth's evidence?

■ On appeal from the denial of PCRA relief, this court must determine whether the post-conviction court's findings were supported by the record and whether the court's order is otherwise free of legal error. *Commonwealth v. Blackwell*, 436 Pa.Super. 294, 647 A.2d 915 (1994). The findings of the post-conviction court will not be disturbed unless they have no support in the record. *Id.*

■ We find each of Bell's claims meritless. In his first two issues, Bell claims that the PCRA court erred in its finding that the Commonwealth would be prejudiced in retrying Bell. Bell asserts that the recorded testimony from the original trial could be used on retrial. Bell claims that this vitiates any prejudice to the Commonwealth. To support his argument, Bell relies on *Commonwealth v. Melson*, 432 Pa.Super. 1, 637 A.2d 633 (1994) and 42 Pa.C.S.A. § 5917.

In *Melson*, a witness was found unavailable because he refused to testify at the defendant's retrial. The court held that since 42 Pa.C.S.A. § 5917 did not allow for admission of prior recorded testimony where a witness refused to testify, the testimony could be admitted under a common law exception to the hearsay rule.[1] Pennsylvania common law allows admission of prior recorded testimony from a preliminary hearing provided that (1) the witness responsible for that testimony is presently unavailable; (2) the defendant had counsel; and (3) the defendant had a full and fair opportunity to cross-examine the declarant during the earlier

proceeding. *Commonwealth v. McGrogan*, 523 Pa. 614, 568 A.2d 924 (1990); *Commonwealth v. Chestnut*, 511 Pa. 169, 512 A.2d 603 (1986); *Melson, supra; Commonwealth v. Carbaugh*, 423 Pa.Super. 178, 620 A.2d 1169 (1993); *Commonwealth v. Smith*, 380 Pa.Super. 619, 552 A.2d 1053 (1988). As well, the issues in the prior proceeding and the purpose for which the testimony was there offered "must have been such that the present opponent had an adequate motive for testing on cross-examination, the credibility of the testimony now offered."

*Commonwealth v. Smith*, 436 Pa.Super. 277, 285–87, 647 A.2d 907, 911 (1994) (quoting *Commonwealth v. Velasquez*, 449 Pa. 599, 601 n. 3, 296 A.2d 768, 770 n. 3 (1972); *Commonwealth v. Taylor*, 299 Pa.Super. 113, 445 A.2d 174 (1982)).

The *Melson* court held that even though section 5917 did not apply, the prior testimony met the requirements of the common law exception—the witness was unavailable and the defendant had counsel and a full opportunity to cross-examine the witness at the prior proceeding. *Melson*, 432 Pa.Super. at 13–14, 637 A.2d at 639, *citing Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977).

Neither the holding in *Melson* nor section 5917 are beneficial to Bell. His argument ignores the fact that the issue of co-defendant Small's personal motive was not explored during trial in 1983. In his PCRA petition, filed March 1, 1990, eight years after trial, Bell initiated the theory that co-defendant Small had his own agenda during the robbery. At the July 12, 1993 hearing on that petition, Bell claimed for the first time that codefendant Small killed the victim as revenge for McCrary's alleged affair with Small's wife. At the PCRA hearing, Bell introduced a witness, Robert Smithson, a convicted murderer whom Bell met in prison,

---

1. Section 5917 of the Judicial Code, which applies where a witness is deceased, provides:

§ 5917. **Notes of evidence at former trial**

Whenever any person has been examined as a witness, either for the Commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if

such witness afterwards dies, or is out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he becomes incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue.

42 Pa.C.S.A. § 5917 (emphasis added).

and allegedly the brother of Small's former wife, who testified that Bell was duped into believing that he and Small would only rob McCrary and Blake, that Small intended to kill McCrary, and that Small had told Smithson that he had to kill McCrary as a result of the alleged adulterous affair between McCrary and Small's former wife (Smithson's alleged sister).

At the trial, however, the evidence indicated that Small killed McCrary while coming to Bell's aid as McCrary was attempting to overpower Bell. No evidence was presented to support the theory that Small had a personal motive to seek revenge upon McCrary. Bell presented the following testimony on his own behalf on direct examination:

> Defendant: At this time Patrick Blake, he laid down on the floor, and Jon McCrary laid down on the floor, and I pulled the wire out of the wall, and I proceeded to tie up Patrick Blake, at which time Patrick Blake struck the co-defendant [Elwood Small] and jumped up. [Small] fell back on the floor, and Jon McCrary jumped up and was hitting me with a flurry of punches, at which time the co-defendant ran over to the deceased and hit him three times. At the time, I didn't know. It sounded like punches at the time.

Section 5917 specifies that the notes of testimony from the original trial are competent evidence "upon a subsequent trial of the same criminal issue." 42 Pa.C.S.A. § 5917 (emphasis added). See Commonwealth v. Taylor, 299 Pa.Super. 113, 445 A.2d 174 (1982)(for prior recorded testimony to be admissible, issues in first proceeding and hence purpose for which it was there offered must have been such that present opponent, or some person in like interest, had adequate motive for testing on cross-examination credibility of testimony now offered). See also Commonwealth ·v. Munchinski, 401 Pa.Super. 300, 585 A.2d 471 (1990)(trial court properly refused to admit co-defendant's testimony from his bench trial to exculpate defendant, though testimony would technically be admissible under unavailable witness rule, where Commonwealth never had opportunity to cross-examine co-defendant at his trial; co-defendant only presented insanity defense, and it was that issue alone on which Commonwealth had opportunity to cross-examine).

The Commonwealth, without the only eyewitness to the events leading up to and including McCrary's murder, would be hampered in its ability to rebut a theory untested at the original trial. Bell's suggestion that the Commonwealth admit prior recorded testimony neither addresses nor refutes the PCRA's finding of prejudice. As the Commonwealth aptly notes, the PCRA was not designed to afford a defendant an opportunity to present a new defense unanswerable due to the passage of time. We find no legal error. Blackwell, supra.

■ Bell also argues that the trial court erred in permitting the Commonwealth to establish prejudice on a "standard of proof less than a preponderance of the evidence," and thereby impermissibly shifted the burden of proof to Bell to establish that the Commonwealth would not be prejudiced. We find this argument completely unfounded. Bell argues in his brief: "Here, where the prejudice, assuming arguendo that the Commonwealth has established prejudice, must arise between the period of final affirmance and the date the PCRA petition was filed, and the Commonwealth can establish nothing more than present prejudice, but not when it arose, it has, as a matter of law failed to meet its burden of proof." Bell offers no support for this claim. Further, he contends that the PCRA court "assumed prejudice where a witness was presently unavailable, and determined that mere proof that the unavailability could arise during the period between the affirmance of the conviction on appeal and the filing of the PCRA petition, was sufficient." This contention, too, is unfounded. It makes little sense to require the Commonwealth to establish prejudice for the time period preceding the presentation of Bell's claim. Although the Commonwealth did not establish the precise date on which Blake became unavailable, it did establish that Blake was unavailable at and after the July, 1993 evidentiary hearing, the point at which Bell presented his new theory of defense.

In his fourth issue, Bell argues that he was denied due process of law under both the federal and state constitutions when the PCRA court, upon remand from this court, determined that Bell was not entitled to a new trial after this court had determined that the jury charge on felony murder was erroneous. Bell suggests that the trial court's use of the phrase "in the course of the robbery," instead of "in furtherance of the robbery" amounts to a finding that the Commonwealth failed to meet its burden of proof. Bell maintains, therefore, that the PCRA court's finding that the Commonwealth would be prejudiced even though he had established eligibility for relief under the PCRA, see 42 Pa.C.S.A. § 9543(b), thus precluding retrial, resulted in a denial of due process. Bell cites to *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), which stand for the basic proposition that the Commonwealth must prove each element of a crime beyond a reasonable doubt. Bell's attempt to establish the unconstitutionality of section 9543(b) of the PCRA disregards the context in which his claims are raised.

In the context of a post-conviction petition, the issue of delay, and in this case unexplained delay, which impacts upon the Commonwealth's proofs, is a factor in assessing the merit of a claim raised in a post-conviction petition. *See Commonwealth v. McGeth*, 347 Pa.Super. 333, 500 A.2d 860 (1985); *Commonwealth v. Courts*, 315 Pa.Super. 124, 461 A.2d 828 (1983). *See also Commonwealth v. McAndrews*, 360 Pa.Super. 404, 520 A.2d 870 (1987)(long delay is a relevant consideration in review of petition filed pursuant to PCRA, and where there is no justification for delay, court may take more stringent approach to allegations raised in petition, especially when delay has resulted in problems of proof for the Commonwealth or when opportunity to have raised the issues earlier would have provided more meaningful review with greater capacity to reconstruct record through testimony and other evidence). We find here that Bell's argument disregards the context in which he raises the constitutional arguments. Bell essentially raises sufficiency of the evidence claims, not

cognizable in the context of a PCRA petition, 42 Pa.C.S.A. § 9543, after extensive unexplained delay. Bell chooses to disregard the holding in *McAndrews*, which we find is directly applicable here.

Next, Bell claims the PCRA court erred in admitting the hearsay testimony of Officer Dailey to establish Patrick Blake's unavailability. Officer Dailey testified as follows:

> I ran a criminal record check of Patrick Anthony Blake with negative results, and I also ran a B.M.V. check, of the Department of Motor Vehicles checks, with negative results. I looked through the file, your Honor, the original file, of the homicide file, and I s[aw] that there were two different addresses listed, and I sent certified mailings to both those addresses with a letter basically asking the individual to get in touch with me. Both those mailings were returned to me by the post office as undeliverable. I contacted the New York City Police department, and **I spoke to a Sgt. Cusak, C–U–S–A–K, and I asked him, and he did run a B.M.V. check again from New York City. He told me that his records indicate that there was a Patrick Anthony Blake from one of the addresses that I had given him, but his last knowledge of him, the record indicates, that he had a suspended driver's license from nine years ago; 1987. Sgt. Cusak did have a police officer go to the residence, but he advised me that the person who lives there now is a Pauline Ester, who's lived there for a year, and she had no knowledge and never heard of a Patrick Anthony Blake. Sgt. Cusak advised me that the New York City Police Department had no other record of Mr. Blake.**

PCRA Hearing, August 5, 1996, N.T., p. 5 (emphasis added).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Commonwealth v. Jones*, 530 Pa. 591, 610 A.2d 931 (1992); *Commonwealth v. Bujanowski*, 418 Pa.Super. 163, 613 A.2d 1227 (1992). Hearsay exists where the proponent is offering it for the purpose of prov-

ing the facts communicated in the statement itself. *Commonwealth v. Darden*, 311 Pa.Super. 170, 457 A.2d 549 (1983).

■ We find Officer Dailey's statements were not hearsay. The statements were not offered to prove that Sgt. Cusak in fact ran a B.M.V. check or that Patrick Blake did in fact have a suspended driver's license from 1987. The statements were offered to show a course of conduct, the steps Officer Dailey followed to contact Blake. Where the potential prejudicial impact is minimal, certain out-of-court statements offered to explain a course of police conduct are admissible. *See Commonwealth v. Jones*, 540 Pa. 442, 450–51, 658 A.2d 746, 750–51 (1995)(statements made to officer investigating murder by friend of defendant admissible to explain course of police investigation); *Commonwealth v. Sneed*, 514 Pa. 597, 526 A.2d 749 (1987); *Commonwealth v. Cruz*, 489 Pa. 559, 414 A.2d 1032 (1980); *Commonwealth v. Carelli*, 377 Pa.Super. 117, 546 A.2d 1185 (1988); *Commonwealth v. Underwood*, 347 Pa.Super. 256, 500 A.2d 820 (1985). Such statements do not constitute hearsay because they are not offered for the truth of the matters asserted, but merely to show the information upon which the police acted. *Commonwealth v. Tselepis*, 198 Pa.Super. 449, 181 A.2d 710 (1962).[2]

We conclude that Officer Dailey's statements were not prejudicial; the trial in this case was conducted before a judge, not a jury, and the statement did not infer that Bell had committed a crime. *Jones, supra.* We find no legal error. *Blackwell, supra.*

■ Finally, Bell argues that the PCRA court erred in failing to appoint a private detective to conduct an investigation in New York to locate Patrick Blake, or to obtain rebuttal evidence as to unavailability of the witness, where appellant is indigent, represented by court appointed counsel, and appellant is without the resources to conduct his own investigation. Bell contends that since he was required to prove "the lack of

prejudice or that the prejudice did not occur because of the delay in filing the petition, to deny an investigator is to effectively deprive appellant of effective assistance of counsel, ... and Equal Protection...."

■ In *Commonwealth v. Gelormo*, 327 Pa.Super. 219, 475 A.2d 765 (1984), this court stated:

Under the law of Pennsylvania, as in a majority of states, the appointment of an expert witness or an investigator to assist in the preparation of a defense is vested in the sound discretion of the trial court .... [footnote omitted].

*Id.* at 227, 475 A.2d at 768. Generally, the trial court will not be found to have abused its discretion in the absence of a clear showing as to the content, relevancy and materiality of the testimony of the potential witnesses. *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986).

■ Bell argues that an investigator was required to either locate Patrick Blake or establish that he in fact was unavailable. We disagree. The Commonwealth detailed its investigation and its efforts to locate Blake. The PCRA court was satisfied that this presentation established unavailability. This finding is supported in the record. *Blackwell, supra.* Neither the federal constitution nor our state constitution mandates that an expert be appointed at the public's expense to assist a defendant in the preparation of a defense. *Gelormo*, 327 Pa.Super. at 227–29, 475 A.2d at 769–770. Bell's argument has failed to establish legal error or abuse of discretion. *Blackwell, supra; Gelormo, supra.*

Order affirmed.

---

**2.** We note that Bell made no contemporaneous objection to Officer Dailey's testimony. *See* Pa. R.A.P. 302(a); *see also Commonwealth v. Pearson*, 454 Pa.Super. 313, 321–23, 685 A.2d 551, 555 (1996); *Commonwealth v. Burkholder*, 528

Pa. 119, 595 A.2d 59 (1991). Bell's motion to strike Officer Dailey's testimony was made one week after the hearing, thereby precluding the Commonwealth's opportunity to call the declarant.