J-S46043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LESTER EADDY | : | |
| | : | |
| Appellant | : | No. 3289 EDA 2017 |

Appeal from the PCRA Order September 25, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0011407-2010

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED SEPTEMBER 24, 2019**

Appellant, Lester Eaddy, appeals from the order entered September 25, 2017, that dismissed his first petition filed under the Post Conviction Relief Act ("PCRA")[1] without a hearing.  As the PCRA court failed to make sufficient findings of fact, we vacate the order and remand for an evidentiary hearing to be held within 30 days of the date of this memorandum.

Pursuant to Appellant's direct appeal from his "judgment of sentence of twenty-five to fifty years imprisonment for robbery and possession of an

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541–9546.

instrument of crime ('PIC')[,[2]]" this Court set forth the facts underlying the current appeal as follows:

> On July 19, 2010, at approximately 11:00 a.m., Selemani Sambira was robbed at knifepoint while walking down 52nd Street in Philadelphia on his way to work. A man he later identified as Appellant pointed the knife in his face and asked, "What do you have?" N.T., 4/11/12, at 122-23. Appellant took fifty dollars in cash from him and fled into a house located at 1123 North 52nd Street as the victim called 911 from his cell phone.
>
> Police Officer Antoine Wesley and his partner Officer David Gerard proceeded to the scene in response to the call. The complainant described his assailant and recounted how he had been robbed at knifepoint. He then pointed out the house Appellant had entered. As the officers headed to that location, they heard over the radio that other officers were on foot in pursuit of a man wearing a green Eagles jersey.
>
> Police Officer Paul Buzzone also responded to the call. When he arrived, he noticed the other two officers with the complainant and he proceeded instead to the alley in the rear of the location. While he was on his way, two citizens on a porch told him that the person who had committed the crime had changed his clothes and that he was now wearing an Eagles jersey. The officer almost immediately spotted Appellant in the middle of 52nd Street wearing such attire. When the officer ordered Appellant to stop, Appellant ran. Officer Buzzone pursued him on foot and apprehended him. At the scene, the complainant positively identified Appellant as his assailant. N.T. Trial, 4/11/12, at 48.

***Commonwealth v. Eaddy***, No. 1622 EDA 1012, unpublished memorandum at 1-2 (Pa. Super. filed November 15, 2013). Upon Appellant's arrest, police recovered $38.00 in cash on his person: one twenty dollar bill, one ten dollar bill, one five dollar bill, and three one dollar bills. N.T., 4/11/2012, at 89.

---

[2] 18 Pa.C.S. §§ 3701(a)(1)(ii) and 907(a), respectively.

Sambira later testified that Appellant had stolen one twenty dollar bill and three ten dollar bills from him. *Id.* at 34.

> Police obtained and executed a search warrant for Appellant's home. The search yielded a ten-inch knife located under Appellant's mattress that the victim stated looked like the knife used to rob him. The police property receipt for the knife described it as a ten-inch kitchen knife. Commonwealth's Exhibit 11.

*Eaddy*, No. 1622 EDA 1012, at 2.

Following his arrest, Appellant was first represented by Wayne Jordan, Esquire. Appellant alleges that Attorney Jordan took a statement from Appellant's wife, Cherlinda Jones, in December 2010. Brief in Support of Amended PCRA Petition, 8/4/2016, at 3 (unpaginated); Motion for Investigator, 5/17/2017, at ¶ 7. On June 9, 2011, Attorney Jordan withdrew as Appellant's counsel. On June 13, 2011, Christopher Evarts, Esquire, was appointed as trial counsel.

After jury selection and immediately before the commencement of trial, on April 11, 2012, trial counsel informed the trial court for the first time that Appellant "allege[d] there was a witness" but added "we are having trouble finding her." N.T., 4/11/2012, at 10. The trial court asked, "You've made efforts to contact her and had no luck, and he has provided whatever information, correct?" Trial counsel answered, "Yes." *Id.* The trial court made no additional inquiries into what information was provided by Appellant or what trial counsel's alleged efforts to contact Jones were, and the matter was not mentioned by trial counsel or the court again.

- 3 -

At trial, Appellant testified in his own defense and offered a radically different version of events than those provided in this Court's above summary. According to Appellant, Jones had bought groceries on the morning of the incident, and, as she was coming home with them, Sambira, who had been waiting at a bus stop, offered to help her carry the bags. N.T., 4/12/2012, at 29. Appellant asserted that, when Jones and Sambira arrived at her house, Sambira asked to come in for a drink of water. *Id.* Appellant explained that he and Jones lived on the upper floor of a duplex and that Jones had told Sambira that he would have to wait downstairs. *Id.* at 29, 46. Appellant attested that Sambira followed Jones upstairs, and, when Jones came out with the glass of water, she saw that Sambira had followed her and screamed. *Id.* at 29, 30, 46-47. Appellant continued that he had been "in bed in [his] underwear[,]" heard the scream, and ran out of the bedroom. *Id.* at 30. He saw Sambira "was holding his penis." *Id.* Appellant gave testimony that he then chased Sambira back down the stairs towards the door and threw some paint cans down the steps at him. *Id.* Appellant stated that he chased Sambira out of the house and yelled at him from the porch. *Id.* Appellant testified that, afterwards, he went back inside, put his clothes on, and went to the store, at which point he encountered police. *Id.* at 31. He claimed that he told police that Sambira had sexually assaulted his wife but police did not pursue that line of inquiry. *Id.* at 34, 45. "Appellant denied that he robbed

the complainant or that he ever robbed anyone." ***Eaddy***, No. 1622 EDA 1012, at 12.

On cross-examination, the Commonwealth attacked Appellant's credibility with the fact that Jones was not present to testify and thereby to corroborate Appellant's narrative; the Commonwealth questioned whether Jones really cared for Appellant if she was not in the courtroom that day. N.T., 4/12/2012, at 39-40.

On April 13, 2012, a jury convicted Appellant of robbery and PIC, and, on June 1, 2012, he was sentenced "as a three strikes offender" to 25 to 50 years of incarceration. ***Eaddy***, No. 1622 EDA 1012, at 1, 3. Appellant filed a direct appeal, and this Court affirmed his judgment of sentence. ***Id.*** at 1. Appellant filed an application of allowance for appeal to the Supreme Court of Pennsylvania, which it denied on March 20, 2014.

On October 7, 2014, Appellant filed his first, *pro se*, timely PCRA petition alleging ineffective assistance of trial counsel. Although there is nothing in the certified record appointing counsel or granting permission to amend the PCRA petition, on August 4, 2016, a counseled, amended PCRA petition was filed on Appellant's behalf.[3] The amended PCRA petition pleaded that

_____

[3] The amended PCRA petition states: "On June 2, 2015 counsel was appointed to represent [Appellant] in his Pro Se PCRA petition." Amended PCRA Petition, 8/4/2016, at ¶ 2. This Court's Prothonotary contacted the Philadelphia County Office of Judicial Records requesting any orders appointing counsel and/or granting permission to file an amended PCRA petition dated 2014 through

Appellant "had inadequate representation where trial counsel failed to meet with him and failed to adequately prepare for trial" and "failed to call his wife as a witness[.]" Amended PCRA Petition, 8/4/2016, at ¶ 20. Appellant alleges that there is no evidence that Attorney Jordan ever provided trial counsel with a copy of the statement he had taken from Jones in December 2010. Brief in Support of Amended PCRA Petition, 8/4/2016, at 3 (unpaginated); Motion for Investigator, 5/17/2017, at ¶ 7.

On May 17, 2017, Appellant filed a motion for the appointment of an investigator to locate Jones, who was now homeless. Motion for Investigator, 5/17/2017, at ¶¶ 5, 8. Appellant has lost contact with her and her "whereabouts are unknown" to him. *Id.* at ¶ 5. In this motion, Appellant informed the court that Attorney Jordan has passed away and could not be contacted as to what Jones told him or what he did with Jones's statement after withdrawing as Appellant's counsel. *Id.* at ¶ 7. Appellant also represented that, pursuant to discovery, he had learned that Attorney Jordan's file on his case has been destroyed, and the information about Jones's statement therefore cannot be discovered from a review of the file. *Id.* at ¶ 6. On July 21, 2017, the PCRA court denied Appellant's motion for appointment of an investigator.

---

2016. The Office of Judicial Records sent a supplemental certified record, but no such order was included therein.

In September 2017, the PCRA court entered a notice of intent to dismiss all claims without a hearing pursuant to Pa.R.Crim.P. 907 ("Rule 907 Notice"), and Appellant filed a response. On September 25, 2017, the PCRA court dismissed Appellant's PCRA petition. On October 5, 2017, Appellant filed this timely appeal.[4]

Appellant presents the following issues for our review:

1.    Whether the PCRA court erred in failing to order an evidentiary hearing where [t]rial [c]ounsel refused to respond to PCRA counsel's inquiries, refused to provide discovery and his trial file, and where he refused to respond regarding his efforts to review the Public Defenders' file prior to trial, where he failed to challenge the third strike sentence at the time it was imposed, and where he failed to request a continuance when he had not met with [A]ppellant to prepare for trial, and he was therefore inadequately prepared for trial, the standard of review is whether the court abused its discretion.

2.    Whether the PCRA court erred in failing to order an evidentiary hearing to determine trial counsel's ineffective assistance of counsel where [A]ppellant told trial counsel about the written statement and the witness prior to trial; where [A]ppellant told counsel that proof of his monies could be established through welfare records; where trial counsel refused to review the PD's file before trial or obtain copies of the statement prior to trial to be utilized during the trial; where [t]rial [c]ounsel failed to present any corroborating evidence during trial, specifically where [A]ppellant presented proof of his efforts to get trial counsel to visit and speak with him regarding trial preparation?

Appellant's Brief at 4 (trial court's answers omitted).

---

[4] Appellant filed his statement of errors complained of on appeal on November 21, 2017. The trial court entered its opinion on April 26, 2018.

Preliminarily, we note that, although Appellant lists two claims in his statement of questions involved, as quoted above, *id.*, the argument section of his brief then states: "These two statements of errors complained of on appeal involve similar arguments, facts and law. . . . As such, they will be discussed together." *Id.* at 11. Appellant then proceeds to divide his argument section into four subsections, none of which correspond to his statement of questions involved. *Compare id.* at 4, *with id.* at 15-22. He then adds a generic "Analysis" section. *Id.* at 22-31. Appellant hence has violated Pa.R.A.P. 2119(a), which mandates that "argument shall be divided into as many parts as there are questions to be argued." Although we have chosen to apply our rules liberally, we admonish Appellant and, more importantly, his counsel, and we remind them of the following:

> The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.

*Commonwealth v. Briggs*, 12 A.3d 291, 343 (Pa. 2011). Despite the incoherent and jumbled arrangement of Appellant's brief's argument section, we have attempted to discern his substantive issues.

Appellant contends that his trial counsel was ineffective, because he "was inadequately prepared for trial[.]" Appellant's Brief at 11. Additionally, he asserts that trial counsel failed to respond to PCRA counsel's attempts to

contact him. *Id.* Appellant specifically argues that his trial counsel was ineffective for: (1) failing to call Appellant's wife to testify; (2) insufficiently cross-examining the victim; (3) failing to inform Appellant of the Commonwealth's plea offer; (4) failing to inform Appellant of the potential sentences that he could face if convicted; and (5) failing to prepare Appellant to testify. Appellant's Brief at 15, 17-18, 20, 26-27.[5]

When reviewing a claim that a PCRA court erred by denying an appellant PCRA relief based upon ineffective assistance of counsel, we consider the following legal precepts:

> We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and are free of legal error. . . .
>
> Counsel is presumed to be effective.
>
> To overcome this presumption, a PCRA petitioner must plead and prove that: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

---

[5] The PCRA court found that Appellant's ineffectiveness claims for trial counsel's failure to interview Appellant's wife, to meet with Appellant, and to present corroborating evidence at trial were waived, because Appellant could have brought them on direct appeal but did not. PCRA Court Opinion, filed April 26, 2018, at 9. The PCRA court misconstrues our case law.

As "claims of ineffective assistance of counsel generally should be deferred until collateral review[,]" ***Commonwealth v. Rivera***, 199 A.3d 365, 372 n.3 (Pa. 2018), Appellant did not have an opportunity to raise an ineffectiveness claim against trial counsel prior to this first PCRA petition. Thus, this issue is not waived pursuant to 42 Pa.C.S. § 9544(b).

> A failure to satisfy any of the three prongs of this test requires rejection of a claim of ineffective assistance.

*Commonwealth v. Medina*, 209 A.3d 992, 996, 1000 (Pa. Super. 2019) (internal brackets, citations, and quotation marks omitted) (some additional formatting), *reargument denied* (July 17, 2019).

Counsel may be found ineffective for failing to prepare adequately for trial. *Commonwealth v. Jennings*, 414 A.2d 1042 (Pa. 1980). Assuming Jones's testimony would reflect Appellant's version of events, it would have changed the entire dynamic of Appellant's trial, which was entirely a "he said, he said" situation – for example, no eyewitnesses testified and no surveillance footage of the crime was shown to corroborate Sambira's testimony, even though the robbery occurred outside, in a public street, in the daylight.[6] Indeed, in this Court's analysis on direct appeal of Appellant's claim that the verdict was against the weight of the evidence, it relied upon the fact that the jury "credited the testimony of the complainant rather than Appellant's version of the events." *Eaddy*, No. 1622 EDA 1012, at 13.

In his statement of errors complained of on appeal for his direct appeal, Appellant had also challenged the sufficiency of the evidence to support his convictions. Appellant dropped those claims in his brief to this Court, but the

---

[6] Although Officer Buzzone testified that "two citizens advised [him] that the person that had committed the crime had changed clothing," N.T., 4/11/2012, at 86, these two individuals were never identified at trial and did not testify, and no additional information about them or what they may have seen was provided. *See also Eaddy*, No. 1622 EDA 1012, at 2.

- 10 -

trial court had analyzed them in its opinion pursuant to direct appeal. In its discussion of the sufficiency of the evidence to support Appellant's robbery conviction, the trial court relied entirely upon Sambira's testimony and testimony from police officers about Sambira's earlier identification of Appellant. Trial Court Opinion, filed March 6, 2013, at 7-8 (citing N.T., 4/11/2012, at 33-36, 117-30). For its analysis of the sufficiency of the evidence to establish PIC, although it did rely on the knife found pursuant to the search warrant to establish possession, it only established the elements of instrument **of crime** and criminal intent by relying upon the assumption that the knife – an ordinary kitchen knife, found in many homes – was used in the robbery. *Id.* at 8-11 (citing N.T., 4/11/2012, at 77-81, 86). In other words, without being able to establish the robbery, PIC could not be established. Ergo, if a jury concluded that Jones's testimony undermined Sambira's credibility, leading them to disbelieve Sambira's story, then the evidence would have been insufficient to establish either crime. Appellant's "underlying legal claim" hence is "of arguable merit." *Medina*, 209 A.3d at 1000.

Additionally, Jones's testimony would have supported Appellant's version of events and bolstered his credibility. Also, the Commonwealth would have had no basis to attack Appellant's credibility by repeatedly cross-examining him as to why Jones was not testifying or even present in the courtroom. Even in this Court's analysis of Appellant's challenge that the

verdict was against the weight of the evidence on direct appeal, one of the factors that it considered in finding that the verdict was not against the weight of the evidence was that Appellant's "wife did not testify" to corroborate Appellant's narrative. *Eaddy*, No. 1622 EDA 1012, at 12. If Jones's testimony gave the jury some cause to doubt Sambira and to believe Appellant, the jury may also have placed greater emphasis on the discrepancy between the amount and denominations of cash recovered from Appellant's person upon arrest and what Sambira reported stolen from him during his testimony. *Compare* N.T., 4/11/2012, at 89, *with id.* at 34. For these reasons, there may be "a reasonable probability of a different outcome" at trial if Jones testified, and, consequently, Appellant has established the prejudice prong of the ineffectiveness test, as well. *Medina*, 209 A.3d at 1000; *see also id.* at 988 ("In establishing whether defense counsel was ineffective for failing to call witnesses, [A]ppellant must still prove . . . the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.").

We thereby turn to whether Appellant has established whether trial "counsel's action or inaction lacked any objectively reasonable basis designed to effectuate [Appellant]'s interest[.]" *Id.* at 1000.

> A failure to attempt to produce material witnesses can be a sound basis for an ineffectiveness claim, and our appellate courts are not hesitant to remand appeals to the trial court for an evidentiary hearing to determine the grounds for the conduct of counsel when the reasons, if any, for the inaction cannot be determined from the record.

*Commonwealth v. Mayfield*, 465 A.2d 40, 42 (Pa. Super. 1983) (citing *Jennings*, 414 A.2d 1042; *Commonwealth v. Twiggs*, 331 A.2d 440 (Pa. 1975)). In *Jennings*, 414 A.2d at 1043, "[t]he basis of the ineffectiveness claim [wa]s that counsel inadequately prepared for trial and, consequently, for apparently no sufficient reason failed to seek out alibi witnesses crucial to appellant's defense." The Supreme Court of Pennsylvania concluded that "the reasons, if any, for counsel's inaction [could ]not be determined from the record before [it.]" *Id.* The Pennsylvania Supreme Court thus found that "the appropriate remedy is to remand to the trial court for an evidentiary hearing to determine the grounds for counsel's conduct." *Id.*

In the current action, the basis of the ineffectiveness claim also is that trial counsel inadequately prepared for trial and, consequently, for no reason that is apparent on the record, failed to seek out Jones, who was a crucial witness to Appellant's defense and who, according to Appellant, could corroborate his version of events and contradict Sambira's. *See* Appellant's Brief at 11; *Jennings*, 414 A.2d at 1043. We cannot determine from the record what efforts trial counsel made to locate Jones, when he first learned about Jones as a potential witness, what information Appellant provided to trial counsel about Jones, if trial counsel ever considered filing a motion for appointment of an investigator to locate Jones, how often and when trial counsel met with Appellant, or if trial counsel had some objectively reasonable basis designed to effectuate his client's interest for not having Jones appear

- 13 -

as a witness that is not readily apparent from the existing record. ***See***

***Medina***, 209 A.3d at 1000 (second prong of ineffectiveness test).

The brief discussion at the beginning of Appellant's trial provides insufficient information as to what "trouble" trial counsel had finding Jones, what "efforts" he made "to contact her[,]" and "whatever information" Appellant gave to trial counsel about her; the trial court made no additional inquiries into these matters at that time, either. N.T., 4/11/2012, at 10. This discussion merely established that trial counsel "knew of . . . the existence of the witness[,]" which is merely one of the factors that an appellant needs to prove in order to establish that "defense counsel was ineffective for failing to call [a] witness[.]" ***Medina***, 209 A.3d at 998.

Accordingly, as in ***Jennings***, 414 A.2d at 1043, we hold that the appropriate remedy is to remand to the PCRA court for an evidentiary hearing to determine the grounds for counsel's conduct.[7] Said hearing must be held within 30 days of the date of this memorandum.

Assuming that, after an evidentiary hearing, the PCRA court finds no "objectively reasonable basis designed to effectuate his client's interest" existed for trial counsel's decision not to call Jones as a witness, ***Medina***, 209 A.3d at 1000, our next inquiry must be whether it would then be appropriate for the PCRA court to appoint an investigator to attempt to locate Jones. ***See***

_____

[7] The Commonwealth does not oppose remand for an evidentiary hearing. Commonwealth's Brief at 10-11.

- 14 -

*Commonwealth v. Howard*, 719 A.2d 233, 241-42 (Pa. 1998) (PCRA courts "have been accorded the ability to appoint experts and other professionals to assist an indigent petitioner upon a showing that such assistance is reasonably necessary to the preparation of the petitioner's case"); *Commonwealth v. Bell*, 706 A.2d 855, 862 (Pa. Super. 1998) ("the appointment of . . . an investigator to assist in the preparation of a defense" is permissible). An investigator may only be appointed where a PCRA petitioner "identif[ies] a particularized need for such assistance related to a colorable issue presented in his . . . petition, or where an adequate alternative" is not "available." *Howard*, 719 A.2d at 242. Appellant has demonstrated that no adequate alternative to the appointment of an investigator is available to locate Jones and to establish the substance of her testimony, given that Attorney Jordan is deceased and his file on Appellant's case has been destroyed. Motion for Investigator, 5/17/2017, at ¶¶ 6-7.

Accordingly, if the PCRA court finds no objectively reasonable basis for trial counsel's actions after the evidentiary hearing, the PCRA court must appoint an investigator to attempt to locate Jones.[8] The PCRA court may limit the length of time that the investigator has to locate Jones, but Appellant may petition the PCRA court for extensions of time upon good cause shown. If Jones cannot be located within the allotted time (including any extensions of

---

[8] The Commonwealth also does not oppose remand for the appointment of an investigator to try to locate Jones. *Id.*

time authorized by the PCRA court), the PCRA court may enter an order denying the PCRA petition.

If Jones is located, PCRA counsel may then motion for an additional evidentiary hearing; the motion must state whether Jones would have been available and willing to testify for the defense had she been found before Appellant's trial in April 2012 and must include an affidavit by Jones. *See Commonwealth v. VanDivner*, 178 A.3d 108, 128 n.22 (Pa. 2018), ("In order to prevail on a claim that trial counsel was ineffective for failing to present a witness, an appellant must demonstrate that . . . the witness was willing and able to cooperate on behalf of the defendant"); *Commonwealth v. Tharp*, 101 A.3d 736, 757-58 (to establish that trial counsel rendered ineffective assistance by failing to call a certain witness, the defendant must demonstrate that "the witness was willing and able to cooperate on behalf of the defendant" at her trial); *Medina*, 209 A.3d at 998 ("In establishing whether defense counsel was ineffective for failing to call witnesses, [A]ppellant must [still] prove . . . the witness was available to testify for the defense . . . [and] the witness was willing to testify for the defense").

The PCRA court may then hold an additional evidentiary hearing to hear any testimony from Jones before deciding whether to grant or to deny Appellant's PCRA petition. "[T]he PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to relief, and no purpose would be served by further proceedings."

*Commonwealth v. Postie*, 200 A.3d 1015, 1022 (Pa. Super. 2018) (*en banc*); *see also Medina*, 209 A.3d at 1000.

In conclusion, we vacate the current PCRA order and remand for further proceedings consistent with this decision. As we are remanding on Appellant's first allegation of ineffective assistance of counsel, we need not reach his remaining ineffectiveness claims at this time.[9]

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

President Judge Panella Concurs in the Result.

Judge Olson Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/19

---

[9] Appellant is without prejudice to raise these claims again before this Court if the PCRA court hereafter denies his PCRA petition.